970 So.2d 935 (2008)
Mark BEDFORD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1405.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
*936 Mark Bedford, South Bay, pro se.
Bill McCollum, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR CLARIFICATION
PER CURIAM.
We grant the motion for clarification, withdraw our prior opinion and substitute the following in its place.
The appellant, Mark Bedford, seeks review of the summary denial of a rule 3.850 motion. The lower court denied relief believing the particular issue raised had been rejected on the merits in one of the several prior motions, and was thus procedurally barred. While the lower court has rejected several motions related to this issue, and this court has affirmed, the particular issue has never been addressed on the merits and we must consider whether we should address it to prevent a manifest injustice. Because, however, the issue *937 presented was objected to at his original trial and could have been raised on direct appeal, no manifest injustice is shown. We affirm.
The state charged Bedford by information in 1994 with delivery of cocaine within 1000 feet of a school, citing violations of sections 893.13(1)(c)1. and 893.03(2)(a), Florida Statutes. Over the objection of the defense, the jury was instructed on a purported lesser included offense of delivery of a counterfeit controlled substance, a violation of section 831.31, Florida Statutes. That charge would have been inappropriate under the facts of this case. See Twinn v. State, 442 So.2d 286 (Fla. 3d DCA 1983). Although the substance taken from Bedford tested positive for cocaine, the jury found Bedford guilty of the purported lesser included offense, and the judge imposed a time-served sentence. Bedford did not appeal this conviction or sentence. This conviction, however, led to his habitualization in another case.
Upon learning of the conviction's affect on habitualization, he filed a motion for postconviction relief claiming his attorney was ineffective for failing to file an appeal. Ultimately, this was treated as a petition for belated appeal. After an evidentiary hearing, the trial court denied the claim, finding that he had not requested his attorney to file an appeal. This court subsequently denied his petition for writ of habeas corpus to file a belated appeal.
Bedford then filed another rule 3.850 motion, but this motion was directed to ineffective assistance of counsel at the evidentiary hearing on the petition for belated appeal. In August 1999, while this claim was pending, he filed another motion for postconviction relief. In this motion he alleged that his conviction constituted fundamental error because he was convicted of an uncharged crime for which no evidence was presented at trial. The state argued that relief was barred on procedural grounds, because the motion was successive and untimely, as it was filed more than two years after his conviction became final in 1995. The trial court agreed and summarily denied the motion. We affirmed. Bedford v. State, 768 So.2d 461 (Fla. 4th DCA 2000).
A series of petitions and motions followed, trying to get the trial and appellate courts to address the merits of his motion claiming fundamental error. He explained that his original motion was not untimely, because he was not incarcerated in connection with his prior crime. Until Wood v. State, 750 So.2d 592 (Fla.1999), rule 3.850 contained an "in custody" requirement. Where this was not met, a defendant could file a petition for writ of error coram nobis to seek relief. There was no time limitation on such motions. Wood amended the rule for 3.850 relief to eliminate the "in custody" requirement and applied the two-year time limitation requirement of the rule to petitions for writ of error coram nobis. However, it permitted defendants adjudicated guilty prior to the opinion a period of two years from the date of the opinion (May 27, 1999) to file claims traditionally cognizable under coram nobis.
Bedford was in a situation similar to Wood. He was not in custody for the conviction he sought to challenge, but his present sentence was enhanced because of his prior conviction. Bedford's motion for postconviction relief challenging his conviction filed in August 1999 was timely under Wood, a fact that both the trial court and our court overlooked.
Bedford did not file a motion for postconviction relief related to his conviction and sentence (as opposed to the petition for belated appeal) until the August 1999 motion which claimed his conviction was fundamentally erroneous. Therefore, his *938 motion was neither successive nor untimely.
Because Bedford has filed many motions addressing this in the trial court and appealed them to our court, all of which have been denied on grounds other than the merits of the issue, the question is whether res judicata, law of the case, collateral estoppel, or any other doctrine applies to deny him relief. These judicial doctrines serve the purpose of preventing the relitigation of issues which have already been decided or could have been decided in prior litigation. However, none of these doctrines will be invoked where a manifest injustice would result. See State v. McBride, 848 So.2d 287, 291-92 (Fla. 2003). We conclude that no manifest injustice has occurred in this case for the following reasons.
The claim of error could have been properly raised on direct appeal. Bedford admits his attorney objected during the charge conference and objected after the judge read the questionable instruction, thus preserving the issue for appellate review. "The law is clear that where an issue could have been raised on direct appeal, it is not a proper subject for a rule 3.850 motion." Childers v. State, 782 So.2d 946, 947 (Fla. 4th DCA 2001); see also Koon v. Dugger, 619 So.2d 246, 247 (Fla.1993); Armstrong v. State, 429 So.2d 287, 288-89 (Fla.1983).
Bedford alleges, instead, that the error was fundamental and thus can be raised at any time. Where an error is fundamental, it may be raised for the first time at any point, including a post-conviction proceeding. See Willie v. State, 600 So.2d 479, 482 (Fla. 1st DCA 1992). See also Hipp v. State, 650 So.2d 91, 92 (Fla. 4th DCA 1995) (noting that an error which amounts to a denial of due process can be raised for the first time in a post-conviction proceeding).
Generally it is a denial of due process to convict on a crime not charged. See Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948). Even to this proposition there are exceptions, however. In Ray v. State, 403 So.2d 956 (Fla. 1981), our supreme court held that
it is not fundamental error to convict a defendant under an erroneous lesser included charge when he had an opportunity to object to the charge and failed to do so if: 1) the improperly charged offense is lesser in degree and penalty than the main offense or 2) defense counsel requested the improper charge or relied on that charge as evidenced by argument to the jury or other affirmative action. Failure to timely object precludes relief from such a conviction.
Id. at 961 (footnote omitted).
We think the rule of Ray applies to this case, even though the defendant objected to the improper jury instruction charging an erroneous lesser offense. First, the offense for which he was convicted is both lesser in degree and penalty than the charged offense. Second, despite the alleged objection to the jury instruction, Bedford does not state whether his attorney relied on this lesser offense in his argument to the jury. Moreover, just as failure to timely object precludes relief from a conviction on an erroneous lesser included offense, failure to appeal the preserved issue should also yield the same result. Bedford had the opportunity to appeal a preserved error, and he failed to do so. Even constitutional errors can be waived if not timely presented. Id.
Considering the entire history of this case, we do not find that a manifest injustice *939 has occurred such that Bedford is entitled to relief.
Affirmed.
WARNER and HAZOURI, JJ., concur.
POLEN, J., concurs specially with opinion.
POLEN, J., specially concurring.
I write separately simply to point out the irony in how we ultimately came to our conclusion that appellant is not entitled to relief. This is a case that clearly illustrates the situation of a party "snatching defeat from the jaws of victory." In our prior slip opinion, issued September 19, 2007, we concluded that appellant was entitled to a hearing on the merits, despite the numerous prior motions and appeals set out in the majority opinion, "in the interest of justice." We based our decision, in part, on our erroneous belief that appellant's trial counsel had failed to object to the improper jury instruction.
Then, inexplicably, appellant, who is pro se, filed a Motion for Clarification! Did he not understand that he had prevailed? Or did he just want to make sure he was being perfectly candid with the court? Having been thus advised of our factual error concerning the preservation of the jury instruction issue, we were clearly compelled to reach the conclusion stated by the majority  appellant could have raised this issue on direct appeal.
This is not an isolated occurrence. While statistically there is a low percentage of pro se collateral criminal appeals that result in reversal, from time to time the victorious pro se appellant will nonetheless seek rehearing. Perhaps we should be grateful that Mr. Bedford gave us an opportunity to correct our error, and not consume any more valuable time for the trial court on remand. But, somehow, I suspect Mr. Bedford may not be so grateful.